versus Preczewski. I thought that's pretty close but we'll find out. I'm happy to go on. Good morning. Good morning, Your Honors. Travis Barham on behalf of Plaintiff Appellants Mr. Uzuebunam and Mr. Bradford. May it please the Court. The District Court should be reversed for three reasons. First, it should have construed the complaint broadly and ruled in plaintiff's favor and ruled plaintiffs pleaded claims for compensatory damages. Claims that insisted upon seeing one magic word in the prayer for relief. Second, the District Court should have given plaintiffs leave to amend the complaint to clarify the relief that they sought, especially since Flanagan's was issued six months after the amended complaint was filed. I went through the complaint pretty well. I actually didn't see a claim for compensatory damages but if you were going to make them, what would they be? Your Honor, we believe that we have pleaded claims for compensatory damages because Mr. Uzuebunam made a special trip to campus in paragraph 248 of the complaint to speak that incurred costs, both in time and in financial costs. So we believe we have pleaded those claims but if we were going to amend, we would clarify that issue, quantify those damages. We would clarify the reputational injury that he suffered as a result of being cited for communicating his religious views. You don't say anything about traveling and expenses. You're right, Your Honor. It does not specify the travel and expenses but it does say that he came to campus for the purpose of speaking. The following paragraphs explain how that trip was futile. The paragraphs 240 to 243 talk about how he reserved that speech zone for that specific day. So he came to campus for the purpose of speaking. That purpose was thwarted when defendants cited him and stopped him for violating the disorderly conduct provision of the Student Code of Conduct. So that trip was futile. That trip is a fair inference from all of this. Remember, we're here on a motion to dismiss. So all inferences, any ambiguous language should be construed in plaintiff's favor, is that he incurred costs, both in time and in expense, in coming to campus for the purpose of speaking. Your Honor, you're correct. We could have said it more clearly but we believe we pled it sufficiently for a motion to dismiss and that's also why we told the district court as soon as the Flanagan's issue was raised that if we believe we've pled this issue, if the court disagrees, we would we request a leave to amend. We at least request that the district court grant us the opportunity to amend by dismissing without prejudice. But didn't the district court dismiss the First Plaintiff's, could file a motion for leave to amend? Technically, Your Honor, it did but the problem is that nine minutes later it rendered judgment and therefore it foreclosed our ability to file the motion that it had instructed us to file. Did you ever come back to the district court and say, look, we got compensatory damages here. Maybe our complaint was no good. It was too brief. It was too long. What's more, our reputation was affected. Did you ever say to the judge, here's what we're concerned about by way of compensatory damages because there's nothing in the complaints that say a word about any of that? Your Honor, we did discuss to the court in our response to the defendant's supplemental motion, the one that we filed in May of 2018, the fact that we had raised the compensatory damages and that's where we said if we haven't clarified this enough, Your Honor, we would at least request that you dismiss without prejudice and grant us the opportunity to amend. And we would have filed the motion to amend, the one that the district court instructed us to file, but the problem again was that nine minutes later the court issued judgment which foreclosed our ability under Rule 15 to file the motion for leave to amend. So we were prevented from filing the motion. I want to ask you another question. Assuming that you can't convince us that you raised the claim enough and that the judge abused his discretion in not allowing you to amend, can you distinguish Flanagan's? Yes, Your Honor, we believe we can. Flanagan's involved a facial claim to a policy that was never enforced, to an ordinance that was never enforced. Our clients here have as applied claims because defendants twice apply their policies, the sentence of Mr. Isabunim and Schill Mr. Bradford. So that distinction between as applied claims where there's actual injury, that injury was complete in 2016. Nothing that defendants did later can erase that from the case. Okay, so the actual injury was the, it was the past deprivation of a constitutional right and even if you only sought nominal damages, you would find that distinguishable from Flanagan's, which was basically our rights are chilled? That is correct, Your The court specified that it was the plaintiff's, their, the only goal of that of that case was to remove the challenge ordinance. They were only challenging the existence of the ordinance. Here we're challenging both, we were challenging both the existence but also now the enforcement of the ordinance or the policies against our clients. And again, those policies were applied twice to silence Mr. Isabunim and then Mr. Bradford self-censored as a result of watching his friend, watching what his friend. I take it they're free at this point to go ahead and speak at these locations, right? That is, there's no limitation today. That is correct, Your Honor, and that's why we did not challenge. Is Bradford still a student there? Yes, Your Honor, he is. Okay, so if the only distinguishment of Flanagan's is what you're just saying, Mr. Bradford has no claim but the other student who, his name starts with a U, would have a claim for past damages which would be nominal if you didn't show compensatory or if you didn't claim compensatory. I would agree with you with one exception. I believe that Mr. Bradford's chill is different, is qualitatively different than the one alleged in Flanagan's because in Flanagan's the only chill came from the existence of the policy. Here, Mr. Bradford's self-censorship was the result of watching the enforcement, the actual enforcement action that Mr. Isabunim suffered. So there is a distinction even there but I agree with Your Honor that Mr. Isabunim, one way or the other, would have a nominal damages claim that survives Flanagan's because Flanagan's involved a facial claim. Here we have as-applied claims. In addition, Flanagan's is different because there, the challenged ordinance was at odds with other regulations that were also relevant. Here we don't have that critical fact. You directed your answer, your previous answer regarding Flanagan's to page 1256. Can you tell me what language you're speaking? If I did, Your Honor, I apologize. I misspoke. It was 1264 and 1265. And there the court was talking about 1264 and 1265. But Your Honor, we also, but again, so we believe that our nominal damages claims are distinguishable from those in Flanagan's for these reasons. But again, the critical, the primary reason we believe the district court should be reversed is because we believe we pleaded the claims for compensatory damages. We allege those in every count of the complaint. We believe we've pleaded sufficient facts. If not, we were willing to clarify that and we would have had the district court given us a reasonable opportunity to amend the complaint. But by issuing judgment nine minutes after it issued its motion to dismiss decision, we could not seek that, we could not seek leave to amend. And so therefore, we believe this court can address this issue without even having to get into the intricacies of Flanagan's. But if it does, again, we believe we're different because we have as applied claims for actual censorship. There's no way, nothing can erase that injury. But those, the constitutional injuries were complete in 2016. Those injuries have never been addressed, let alone remedied. And therefore, plaintiff's claims should not have been made. You basically had two claims. One was a facial challenge to the statute and the other was as applied enforcement and one is dead under Flanagan's but the other is not. That is correct, Your Honor. We did not challenge the declaratory and injunctive relief components of our claim. Okay. That part is moot now. Yes, Your Honor. We didn't even appeal that issue. The only issue here is our challenge to the actual enforcement actions taken against the client. All right. I said it that way. I phrased it that way because I want to see what the other side says to that phraseology. I understand. If there are no further questions. I have one. Yes, sir. Is there any indication Bradford is chilled in any way today? He's free to do what the lawsuit sought to get him the opportunity to do. That is correct, Your Honor. The only chill that we're seeking remedy for is the chill that he experienced during the time when the That's for compensatory damages. Compensatory and nominal damages, Your Honor, because the compensatory damages would be whatever actual proof we can show of loss to him. But the nominal damages would recognize that for that period of time, while that policy was in effect, his constitutional rights were violated. That's the purposes of nominal damages. Thanks very much. You have reserved five minutes for your rebuttal. Thank you, Your Honors. Good morning. Good morning, Your Honor. May it please the court. My name is Ellen Cusimano. I'm here on behalf of President Stanley Przewski, as well as the other named employees of Georgia Gwinnett College. We're asking the court to affirm the dismissal of this case on the grounds that it is moot. Our position is that this case is controlled by Flanagan's Enterprises v. City of Sandy Springs. That case was decided only two years ago. It was an en banc decision. In that case, this court thoroughly assessed the issue of nominal damages. I would also note that this panel, at this point, lacks authority to overrule Flanagan's, but most importantly But is it distinguishable, at least on one grounds? The grounds that in Flanagan's, the statute wasn't enforced against anyone. So he's divided up his claim for purposes of this argument. And so the answer is, does part of that claim survive because it's different from Flanagan's, unless we just say that one's bad, too, for other reasons than in Flanagan's. Flanagan's was an unenforced statute, and that's what the opinion says. I mean, I don't know the background, but it says it was a moribund statute, and it was on the books, and it basically chilled behavior. And, Your Honor, I do disagree with that characterization of Flanagan's Okay, why? for these reasons. Well, first of all, paragraph 10 in Flanagan's complaint deals with a plaintiff who suffered from MS, and in order to be intimate with her husband, she needed to buy these banned devices. She also sought to sell those devices to other women who suffered from that same condition. So, in other words, she was engaged in speech, and then all of a sudden was unable to engage in that same speech because of the ordinance. Well, she wasn't all of a sudden. The ordinance was around and wasn't enforced, right? That is correct, but it wasn't enforced because she decided to stop engaging in that speech, especially since it was because it was a criminal ordinance. And then you also have a second plaintiff in that case who was an artist who used those devices in his artwork and then sought to sell his artwork, and he, because of that ordinance, was no longer able to buy those devices, create his artwork, or sell his artwork. Those are First Amendment violations, and the effect of that ordinance was to keep those plaintiffs from engaging in speech that they wanted to engage in. The same is true in this case. But no, okay, but the student whose name starts with U, he actually violated the policy and action was taken against him. He was moved. He was stopped. I don't, you know, it's a distinction. Whether it's a distinction that makes a difference, I don't know, but it's a distinction. So the question is, you say it's not a constitutionally relevant distinction. Is that what you're saying? Yes, Your Honor, that is exactly what I'm saying. And in all other respects, Flanagan's is substantially similar to this case. You know, in both cases, you have situations where there is a First Amendment challenge to a government policy. Flanagan's was a facial challenge case, right, because nobody, there was no enforcement, so it's a facial challenge case, right? It appeared to be so. It was not explicitly stated that way in the complaint. But again, I would argue that those two plaintiffs, they had been engaging in speech, and all of a sudden they could not engage in speech. So that is, I don't think we can say that that is a lesser First Amendment violation than what happened here. Let me ask you a question, another question. Assuming, arguendo, that Flanagan's doesn't control, then what's your reason for saying the case is moved anyway, that he has nominal damages and he can't get redressed for his constitutional injury? I mean, what about Cary? Well, I think Flanagan's addressed Cary and found that it was distinguishable because there was no mootness analysis in Cary. Well, just a second. Mootness can happen at any time in a case. You start out with a claim for compensatory damages, and it falls apart. And at that point, if nominal damages don't save a case, the case would die, right? It dies right then. But Cary didn't die right then. It was the case survived, right? This distinction that if you combine a nominal damage claim with a compensatory damage claim, and the compensatory damage claim dies, and the nominal damage claim saves the case, why is that? Why does it save it when it used to be with a compensatory damages claim? Well, I believe in Cary what happened is it was remanded to the court, and at that point in time there was still a live claim for compensatory damages. And so the mootness issue never really even came into play. Well, it should have come up in the court. It should have died. I mean, there can't be a principle that when you have a compensatory damage claim, it always saves your case even when it dies. It died in the first part of the case. It died in the second part of the case. It makes no sense to me that how having a compensatory damage claim that was no good saves a case. And, Your Honor, I understand your concern. Just going back to Flanagan's, this court has made it clear that nominal damages cannot alone save a case from being dismissed as moot. Does that principle only apply when you've made a facial challenge to a statute or policy? No, Your Honor, I don't think that is the case. There's nothing in Flanagan's suggesting that. It certainly leaves open areas where that could be the case, for example, in libel cases and trespass cases. But here I really don't see that there's any distinguishable facts that would make Flanagan's not control the outcome of this case. Let me go to his first point, which is compensatory damages. As I read that complaint, it said compensatory damages, but it didn't say what they were in the same terms that would survive a challenge to a complaint for vagueness. But he wanted, he says he wanted to amend his complaint, and the district court acted too fast. He never got a chance. Flanagan's came down. It tells him whatever I think of this idea of you need compensatory damages to save your case. It came down, and it said that, and he wants to do that, and he says he never got a chance. Is he right that he never got a chance? I disagree. Explain why he never got a chance. I believe that once we filed our motion to dismiss based on mootness, based on Flanagan's, at that point, the two students could have very easily filed a motion asking the court to allow them to amend their complaint. And so I do think they had a chance to do that, but they decided not to. But they would have to know that the judge was going to say, oh, yes, I'm bound by Flanagan's, it's on all fours with this case, and this case is moot. They would have to know that he was going to rule that way, wouldn't they? Correct. They can't wait until he says it looks moot to me? Well, I think even if the court, even when the court did come down with this decision, you know, plaintiffs all the time come back and ask for a reconsideration and ask for additional relief. So I do think they have to know. How long after, so he files his mootness, and you say their obligation at that point was to ask for reconsideration and to put in, say, we want to file an amended complaint. Correct. That's how you see the obligation. Judge says, hey, it's moot, and then they have to ask for reconsideration or come back and say, yes, Your Honor, and how fast do they have to do that? I don't know how fast they have to do that. That is certainly one option. I think the better approach is that once we filed our motion, citing Flanagan's, which, again, was an en banc case decided two years prior, you know, I think they should have made known to the judge at that point that they wanted to claim compensatory damages. Absolutely, and I think they needed to do more than just say that they wanted to add the magic words of compensatory damages. Well, he said today what his compensatory damages would be. He's got costs and reputation and whatever. They might be $5, but they're compensatory. Correct. All right. I've run out of questions for you. If there are no more questions, I will give it back to my colleague. But, again, our view in this case is that Flanagan's is controlling law and should control the outcome of this case. Thank you. Thank you. A few quick points, Your Honor. My friend on the other side disagreed with the characterization that Flanagan's did not involve enforcement action. But that's explicitly what Flanagan's says. On page 1262, the court cited the city's demonstrated lack of commitment to enforcing the old scheme. 1262 and 1263 noted that the city has no inclination toward enforcing the old scheme. 1263, it never enforced the old ordinance in the first place. In the nominal damages section on page 1264 and 1265, it, again, notes that the only injury was the existence of the challenge provision and that the only goal was the removal of that challenge provision. So there was no enforcement action. That's part of the reason that this court ruled that the declaratory and injunctive claims were removed because that was part of the way that the city proved that it would not revert to the old policy. So that distinguishes our case from Flanagan's enterprises. In addition, Judge Rustani raised the issue of the Cary case from the Supreme Court, and we believe that that case does suggest that nominal damages claims, especially when dealing with as-applied claims, are not moot because there, towards the end of the decision, the Supreme Court specifically said that if the student suspensions were deemed to be legitimate and there was no compensatory injury, the students were still to receive nominal damages. And so that compensatory claim failed at that point. They were still, they died at that point. The nominal damages claims were still going to be, nominal damages were still going to be awarded. On the amendment issue, my friend on the other side noted that we should have filed a motion to amend the complaint before the motion to dismiss was granted. But the problem again is that Flanagan's enterprises was not filed two years before our case was filed. Instead, it came down six months after our amended complaint was filed. We believe that we had already raised the compensatory damages issue. We raised that issue to the district court. We then, and we offered to clarify if the court thought we needed to be more specific in the facts, and therefore, we asked that it grant, that it give us opportunity by dismissing without prejudice. But again, nine minutes after its motion to disorder, the judgment was granted under Rule 15. We could not file a motion for leave at that point in time. Another reason we thought we had raised compensatory damages was because we pled for damages to be determined by the evidence, and that obviously cannot refer just to nominal damages. But we had, we thought we had raised the issue. We thought, sought leave to amend. The district court, again, granted leave nine minutes, or granted issue judgment nine minutes later, preventing us from filing that motion. We couldn't even really raise it in a motion to reconsider context because we'd already raised the issue previously in motions to reconsider for things that had not been raised previously. So we'd raised that in our mootness supplemental brief. So we could not really raise that issue even there. So we should have been granted that leave. If we had, we would have clarified the issue, would have clarified that Flanagan's doesn't even, doesn't apply because we then have the compensatory damages claim, we wouldn't be here. So we would ask, again, that this court reverse the district court, reverse the decision below, remand for further proceedings, allow us to amend the complaint or conclude that we already have fled compensatory damages claims, claims that are not moot. So unless there are further questions. Thank you, your honors. Thank you very much. Thank you both. This court will be in recess until 9 a.m. tomorrow morning. All rise. Great. Thanks very much. Okay. Okay. See you again. Good job.